UNITED STATES of America, Plaintiff,

Sidney Williams, et al., Plaintiff–
Intervenors,

v.

The CITY OF MONTGOMERY, .
ALABAMA, et al.,
Defendants,

Gordon M. Ledbetter and John
D. Shumway, Defendant–
Intervenors.

Civil Action No. 3739–N.

United States District Court,
M.D. Alabama.

March 21, 1997.

Thomas M. Goggans, Montgomery, AL, for defendants-intervenors.

M. Wayne Sabel, Montgomery, AL.

J. Richard Cohen, Montgomery, AL.

Kenneth L. Thomas, Donald V. Watkins, Montgomery, AL, for plaintiff-intervenors.

Kenneth E. Vine, U.S. Atty., Montgomery, AL, Marybeth Martin, Philip K. Eure, Employment Litigation Section, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for plaintiff.

Thomas Tankersley, Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for defendant.

## ORDER

MYRON H. THOMPSON, Chief Judge.

This is a longstanding race discrimination lawsuit against the City of Montgomery, Alabama, and others. In a memorandum opinion and judgment entered on December 18, 1996, *United States v. City of Montgomery,* 948 F.Supp. 1553 (M.D.Ala.1996), this court addressed whether the following orders could be, and should be, dissolved: (1) orders of April 21, 1992, and May 21, 1996, approving a permanent plan for the selection of deputy chief for the City of Montgomery Police Department; (2) order of October 5, 1992, approving permanent promotion procedures for the department; (3) orders of November 2, 1992, and June 24, 1996, approving permanent policies and procedures for transfers and assignments, the filing of internal complaints in the department; and (4) order of February 24, 1993, approving policies and procedures for assignments as mayoral aides. The court held that, unless the parties made an evidentiary showing that these orders are no longer necessary, the orders would not be dissolved. *Id.* at 1570.

### I.

The court explained that, "In making the determination of whether to terminate relief and restore full control to a governmental entity, a court should be informed by, at least, the following three considerations: first, whether there has been full and satis-

factory compliance with the court's outstanding orders; second, whether retention of judicial control is necessary or practical to achieve compliance with any outstanding orders; and third and finally, whether the governmental entity has demonstrated to the public and to those of the disfavored group its good-faith commitment to the whole of the court's orders and to those provisions of the law and the Constitution that were the predicate to the judicial intervention in the first instance." *United States v. City of Montgomery,* 948 F.Supp. at 1563. The court found that, as to the orders at issue, the parties had failed to satisfy these factors. *Id.* at 1566–67. The court gave the parties until February 28, 1997, to submit evidence that satisfied these factors. *Id.* at 1570. In a joint submission filed on February 14, 1997, the parties presented evidence, which, according to them, "demonstrate[s] that continuing jurisdiction of this Court is no longer necessary to maintain the progress made by Defendants over the years toward the achievement of the objectives of each of the cited orders." The evidence is as follows:

*October 5, 1992, Order:* By order entered on October 5, 1992, the court approved permanent promotion procedures for the Montgomery City Police Department. The procedures provided methods for certification by the Montgomery City–County Personnel Board of candidates for promotion to particular ranks within the Police Department. The department would then select from among those candidates, and all parties would be informed of their choices, including the race and gender of the preferred candidates. The parties would have seven days to lodge complaints with the court, and, if there were none, the board could implement the promotions. The promotion lists generated by these procedures were to be in place for only two years, after which new lists would be drawn up under the procedures. Since 1992, the parties have complied with these procedures.

*November 2, 1992, and June 24, 1996, Orders:* By order entered on November 2, 1992, the court required that the defendants implement an internal complaint procedure for the Police Department, one by which complaints charging race and sex discrimination, and related complaints charging retaliation, could be heard and mediated without being presented to the court. The internal complaint procedure was implemented upon the entry of the order and has been in effect since that time. In another order entered on November 2, 1992, the court approved a permanent assignment-and-transfer procedure for sworn Police Department personnel. By order entered on June 24, 1996, the court modified the earlier order approving the assignment-and-transfer policy. Since 1992, the parties have complied with the procedures established and approved in the November 1992 and June 1996 orders.

*April 21, 1992, and May 21, 1996, Orders:* By order entered on April 21, 1992, the court approved a permanent plan for the selection of deputy chief. Four years later, on May 21, 1996, the court modified the plan. In the meantime, by order entered on March 19, 1992, Sandra Pierce–Hanna was appointed one of two deputy chiefs for the Police Department. *United States v. City of Montgomery,* 788 F.Supp. 1563, 1582 (M.D.Ala. 1992). Later, in 1994, the other incumbent deputy chief retired. Since that time, Pierce–Hanna has been the Police Department's only deputy chief. Because Pierce–Hanna has assumed all the responsibilities of the position (formerly assigned to two persons), the City of Montgomery has not filled the other authorized deputy chief position. As a result, because the city has not undertaken to fill the second authorized position, the permanent plan for selection of deputy chief, as outlined in the April 1992 and May 1996 orders, has not been utilized. Nevertheless, the City of Montgomery, according to the parties, is committed to the continued use of the selection procedures for deputy chief.

*February 24, 1993, Order:* By order entered on February 24, 1993, the court established procedures for the selection of mayoral aides. Prior to the entry of that order, two officers had been serving as mayoral aides and they have since continued to serve in that capacity. For that reason, the list created by the February 1993 order has been used exclusively for the purpose of selecting

"fill-in" aides for temporary assignment. The selection of these fill-in's has been without regard to race. According to the parties, should the Mayor of Montgomery need to make any permanent appointments, the appointments will be made in accordance with the February 1993 order and thus without regard to race.

The court, therefore, agrees with the parties that, to the fullest extent possible, there has been full and satisfactory compliance with the orders at issue. The first factor—whether there has been full and satisfactory compliance with the court's outstanding orders—has therefore been satisfied. The second and third factors—whether retention of judicial control is necessary and practical to achieve compliance with outstanding orders, and whether the governmental entity has demonstrated to the public and to those of the disfavored group its good-faith commitment to these orders—have been satisfied as well with regard to the orders at issue.

## II.

In the December 18 memorandum opinion and judgment, the court also observed that "the United States remains concerned about the 'banding' aspect of the Police Department's promotion procedures. The United States has sought to formalize the process of making selections from within bands." *United States v. City of Montgomery*, 948 F.Supp. at 1565. In their February 14 submission, the parties addressed this concern.

Since entry of the December 18 memorandum opinion and judgment, the defendants have, with the help of their testing expert, now fashioned a process for selecting from within bands. The process is as follows:

"When validated selection procedures utilize banding," the following is the process to be used in making selections from within bands. Once the City/County Personnel Department has transmitted the list to the Montgomery Police Department (MPD), AUM or some other testing consultant, which may be the Personnel Department in the future, will assist MPD in selecting candidates from bands as follows.

"The consultant will provide the Chief of Police with a rating form listing those [knowledges, skills, and abilities, also known as] KSAs[,] not tapped by the formal procedures that the consultant deems appropriate for consideration in within-band selection ("untapped KSAs"). The rating form will contain instructions for its use and procedures for quantifying the Chief's judgments. The consultant will also provide separate lists of the KSAs tapped by the formal procedures and the untapped KSAs deemed appropriate for consideration.

"The Chief will request recommendations from the members of the Chief's staff on what candidate(s) is/are best suited to fill a vacancy or vacancies for a given rank. The Chief will instruct the staff members to consider the untapped KSAs and any unique requirements of a specific vacant position or positions in making their recommendations. The staff members may consult personnel folders and other sources of information on candidates' job performance in making their recommendations.

"Once the staff members have made their recommendations to the Chief, the Chief will review the personnel folders of recommended candidates and any other candidates (in the band from which selections are being made) the Chief judges to be worthy of consideration for promotion. The Chief will complete the rating forms provided by the consultant and make his determination of which candidates are best suited for promotion. The Chief's determination will be based upon the scores the Chief assigns to the rating forms. The Chief will then forward the final list of promotees to the appointing authority, the Mayor, for his approval and action.

"In order to assist the staff members in their deliberations, AUM will meet with the Chief's staff members on 2 December 1996 and conduct a training session on selection from within bands. The content of the training session will address the following: 1) the formal promotion procedures and what they measured, 2) the KSAs deemed appropriate for consideration for within-band selection, 3) the need to avoid using KSAs tapped by the formal procedures in selecting candidates from within bands, 4) the need to focus on un-

tapped KSAs in selecting candidates from within bands, and 5) the desirability of considering position-specific requirements in selecting candidates from within bands."

The evidence reflects that this process for selecting from within bands is appropriate as a general guide for those Police Department officials who are responsible for assessing the "KSAs" that are left untapped by the "formal procedure."

### III.

Finally, the parties have presented evidence of the current racial composition of the sworn entry-level and promotional ranks within the Montgomery Police Department. This evidence, they contend, "generally reflects the implementation of policies and procedures which foster equal employment and promotional opportunities." They maintain that the orders at issue, as well as prior orders, have "led to a substantial increase in the number of African–Americans officers hired into the [Montgomery Police Department] and in those serving in all entry-level assignments as well as in the promotional ranks."

The evidence reflects that, as of September 1996, 133 African–American officers represented 33.1% of a total of 402 officers in the three entry-level assignments and positions, and 22 African–American officers represented 19.3% of a total of 114 officers in the first four promotional positions. As a result, the current African–American representation of promotional officers (including deputy chief and chief) is approximately 19%. In contrast, according to the parties, in 1979, shortly after this litigation began, 29 African–American officers represented only 11.2% of a total of 258 officers in entry-level assignments and positions, and two African–American officers represented only 3.4% of a total of 58 officers in the first four promotional positions. As a result, according to the parties, the African–American representation of promotional officers (including deputy chief and chief) was only 3.3%.

In conclusion, the court agrees with the parties that all remaining orders in this litigation should be dissolved. Accordingly, it is

the ORDER, JUDGMENT, and DECREE of the court that:

(1) The orders of April 21, 1992, October 5, 1992, November 2, 1992, February 24, 1993, May 21, 1996, and June 24, 1996, are all dissolved.

(2) This lawsuit is dismissed in its entirety.

It is further ORDERED that costs are taxed against defendants, for which execution may issue.